In re Gary BOBOFCHAK, Dolores Bobofchak, Debtors.

Lois V. HAYNES, Plaintiff,

v.

Gary BOBOFCHAK, Defendant.

Bankruptcy No. 88–1901–NB.
Adv. No. 88–01052–NB.

United States Bankruptcy Court, E.D. Virginia, Norfolk Division.

May 30, 1989.

Robert V. Roussos, Norfolk, Va., for debtors.

Carl E. Eason, Pretlow, Eason & Pretlow, P.C., Suffolk, Va., for plaintiff.

## AMENDED OPINION AND ORDER

HAL J. BONNEY, Jr., Bankruptcy Judge.

THE OPINION AND ORDER IN THIS CASE ISSUED BY THIS COURT ON APRIL 27, 1989, IS HEREBY VOID.

The plaintiff and debtor opened a photography studio business in January 1985. Although no written agreement was executed, the parties agreed to form a general partnership under the name of Haynes–Gary and allow the debtor to begin operating the studio in Virginia Beach, while the plaintiff, Lois Haynes, remained in Smithfield, Virginia. Mrs. Haynes was able to obtain financing for the new studio through the Bank of Isle of Wight and started a partnership checking account, Sixteen Thousand Dollars ($16,000.00), to last at least six months towards the expenditures in the operation of the studio. The parties did not discuss whether the debtor was entitled to draw money from the account for compensation.

In late March 1985, the plaintiff became concerned when the balance of the partnership account was diminishing and no income had been generated by the studio. A few weeks later the plaintiff demanded that the debtor return the checkbook for her inspection. Whereupon she discovered that the debtor had drawn a substantial amount of money from the account for his personal use and had depleted the remainder of the account. In fact, at trial the debtor admitted that he withdrew at least Two Thousand, Nine Hundred and Fifty Dollars ($2,950) from the partnership account for his own use. Additionally, substantial monies had been expended on various camera and film supplies although there was virtually no business conducted. The business was officially closed in May 1985, and the plaintiff thereafter initiated a civil action against the debtor in the Circuit Court of Virginia Beach seeking immediate dissolution of the partnership as well as recovery of monies wrongfully and fraudulently embezzled from the partnership by the debtor.

However, in September the parties negotiated a settlement agreement whereby the debtor would 1) make payments on one-half of the principal and interest on the note with the Smithfield bank and 2) sign a promissory note agreeing to pay Mrs. Haynes Three Thousand Six Hundred Dollars ($3,600.00) at a rate of One Hundred Dollars ($100.00) per month for thirty-six months. The debtor signed the promissory note on October 17, 1985.

The debtor commenced to make payments on both obligations according to the settlement agreement. However, on June 15, 1988, the debtor and his wife filed a Chapter 7 bankruptcy petition. The debtors listed both the debt to Mrs. Haynes and the debt to the Bank of Isle of Wight on Schedule A–3 of their petition as creditors having unsecured claims without priority. The schedule stated that the remaining claim on the promissory note to the bank was $4,869 while the remaining debt to the plaintiff was $2,200. On September 13, 1988, the plaintiff filed a complaint for the determination of non-dischargeability of the debtor's obligations to her and to the bank arising from the settlement agreement.

## ISSUES

### A. ISSUE NUMBER ONE

What portion, if any, of the debtor's underlying obligation to the plaintiff was incurred through fraud, defalcation or any other means that would except this debt from discharge pursuant to 11 U.S.C. Section 523(a)?

### B. ISSUE NUMBER TWO

If a portion of the debtor's original obligation to the plaintiff was of the nature and kind that would be excepted from dis-

charge under Section 523(a)(4), does a settlement agreement between the parties effectively extinguish the non-dischargeable debt arising from a tort and create a new contractual obligation which is subject to discharge?

## CONTENTIONS

The plaintiff contends that the debtors' entire obligation to the plaintiff was incurred as a consequence of the debtors' fraud and defalcation. At the very least, the plaintiff argues that the Two Thousand Nine Hundred and Fifty Dollars ($2,950.00) that the debtor wrongfully withdrew from the partnership for his own personal benefit is non-dischargeable under 11 U.S.C. Section 523(a)(4) as a defalcation against the plaintiff and the partnership.

Second, the plaintiff requests the Court to consider the nature and character of the underlying debts arising from the settlement agreement. The plaintiff claims that the settlement agreement is actually an indicia of the debtor's fraudulent acts of embezzlement and defalcation while acting in a fiduciary capacity as a general partner with the plaintiff. The plaintiff argues that the debtor's obligations to the bank and the plaintiff are not of the type intended to be discharged under the Bankruptcy Code, 11 U.S.C. Section 523(a)(4). The settlement, the plaintiff argues, did nothing to change the underlying character of the debtor's obligations.

The debtor argues that the underlying debts were not incurred through fraud or defalcation but rather were simply the unfortunate consequence of an unsuccessful business venture. The debtor contends that the plaintiff has failed to provide the Court with any evidence showing that the debtor committed fraud or defalcation.

The debtor contends that the promissory note and agreement of settlement were given in full satisfaction of any claim that the plaintiff would otherwise have asserted. The debtor states that no judicial determination was ever made and that in lieu of obtaining a judicial determination, the plaintiff instead opted for the promissory note and settlement letter. The debtor

claims that these actions consisted of the plaintiff actually surrendering her rights to seek a judicial determination of breach of a fiduciary duty. Therefore, the debtor contends that a novation took place and that the plaintiff's only underlying claim is on the note which is dischargeable.

## LEGAL CONSIDERATIONS

### A. BANKRUPTCY CODE

11 U.S.C. Section 523(a)(4) states:

A discharge under section 727, 1141 ... or 1328(b) of this title does not discharge an individual debtor from any debt— ... (4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny; ...

### B. DEFALCATION

As to the term "defalcation," Judge, Learned Hand stated in *Central Hanover Bank and Trust Co. v. Herbst*, 93 F.2d 510 (2nd Cir.1937), that although colloquially the word ordinarily implies some moral dereliction, it may in a bankruptcy context include innocent default, including all fiduciaries which are for any reason short in their account. *See also In re Byrd*, 15 B.R. 154, 156 (Bankr.E.D.Va.1981).

In 1934 the Supreme Court observed that the meaning of the phrase "acting in a fiduciary capacity" had been fixed by judicial construction for nearly a century. *Davis v. Aetna Acceptance Co.*, 293 U.S. 328, 333, 55 S.Ct. 151, 153–54, 79 L.Ed. 393 (1934). The general meaning of fiduciary—a relationship involving confidence, trust and good faith—is far too broad for the purposes of section 523(a)(4). *See In re Cairone*, 12 B.R. 60, 62 (Bankr.D.R.I.1981). The Supreme Court in *Davis* provides for a narrow construction of the term "fiduciary capacity" and defines the term as meaning arising from an express or technical trust. *Davis*, 293 U.S. at 333, 55 S.Ct. at 153–154; *see also In re Barwick*, 24 B.R. 703, 705 (Bankr.E.D.Va.1982).

### C. SETTLEMENT AGREEMENTS

Should an obligation arising from a settlement agreement rather than a judgment

be construed in a different light? One bankruptcy court in *In re Anderson*, 64 B.R. 331 (Bankr.N.D.Ill.1986) held that the settlement agreement between the parties amounted to a novation and was dischargeable in bankruptcy. *See also In re Kelley*, 259 F.Supp. 297 (N.D.Cal.1965). Other courts, however, do not believe that such a finding would be consistent with the intent of Congress as derived from the language of the statute itself. *See Greenberg v. Schools*, 711 F.2d 152 (11th Cir.1983); *In re Kovacs*, 42 B.R. 1 (Bankr.Mass.1982); *In re Peters*, 90 B.R. 588 (Bankr.N.D.N.Y.1988); *In re Pavelka*, 79 B.R. 228 (Bankr.E.D.Pa. 1987); *Firemen's Fund Insurance Company v. Covino*, 12 B.R. 876 (Bankr.M.D. Fla.1981) and *Landgraf v. Griffith*, 41 Ind. App. 372, 83 N.E. 1021 (1908).

In *Greenberg* the Eleventh Circuit ruled that a settlement agreement did not extinguish the original claim for fraud or defalcation for purposes of 11 U.S.C. Section 523(a)(4). The Court stated:

> The underlying debt was unquestionably the result of the debtor's fraud, not his breach of the settlement agreement. The fact that ... claim never natured into a final judgment but was terminated by a settlement agreement should not be controlling. The Bankruptcy Court should inquire into the factual circumstances ...

### POLICY CONSIDERATIONS

This Court joins those who find that a settlement agreement should not extinguish the bankruptcy court's responsibility to look beyond the agreement to the underlying nature and character of the debtor's original liability to the plaintiff. The intent of Congress to except from discharge debts incurred by means of fraud or defalcation could effectively be short-circuited by a simple execution of settlement. To disregard the settlement agreement and look at the underlying nature of the claim would not hinder the overall scheme and intent of the Bankruptcy Code of giving an honest debtor a fresh start. 11 U.S.C. Section 523(a)(4) demonstrates that debts incurred by means of fraud or defalcation are not of

the kind that the Bankruptcy Code purposes to relieve.

### COURT FINDINGS

#### A. COURT FINDINGS AS TO ISSUE NUMBER ONE

■ The Court finds that the debtor committed a defalcation against the plaintiff and the partnership to the extent that he withdrew partnership funds directly for his personal use. As to the remaining portion of the debt, it appears that the plaintiff went into business with someone who was careless or extravagant, certainly not frugal, and who had stars in his eyes about what they would do. This, of course, is not fraud. Therefore, the Court finds that the sum of Two Thousand Nine Hundred Fifty Dollars ($2,950.00) of the debtor's underlying obligation was incurred through defalcation of the type that would except that debt from discharge pursuant to 11 U.S.C. Section 523(a)(4).

#### B. COURT FINDING AS TO ISSUE NUMBER TWO

■ Second, the Court finds that the settlement agreement does not bind the plaintiff from pursuing a trial on the merits as to issue of dischargeability. The language of 11 U.S.C. 523(a)(4) specifically excepts from discharge debts incurred through fraud, embezzlement and defalcation while acting in a fiduciary capacity and the Court should examine the underlying nature of the debtor's original obligation notwithstanding the settlement agreement. The Court has done this.

The Court finds from the evidence that the debtor wrongfully committed defalcation. By his own admission, the debtor acknowledges that he personally "lived off" monies from the partnership account even though there was no agreement that he was permitted to use any of the partnership funds for his personal use. His obligations to the plaintiff and the Bank of Isle of Wight were incurred as a direct result of his defalcation of his fiduciary duties. During the five months of operation of the photography studio, virtually no business activity occurred. The debtor was given no

authority to withdraw monies for his own personal use. When the debtor was commanded to turnover the partnership checkbook to the plaintiff he could not give a satisfactory account of the partnership funds. Having failed to give a proper account to the plaintiff for the Two Thousand Nine Hundred Fifty Dollars ($2,950.00), the debtor has committed defalcation against the plaintiff and that portion of his debt is of the nature and character of the provisions of Section 523(a)(4) of the Bankruptcy Code.

## CONCLUSION

The debtor's obligation to the plaintiff from defalcation of Two Thousand Nine Hundred Fifty Dollars ($2,950.00) is non-dischargeable. The remaining obligation to Bank of Isle of Wight is not a result of the debtors' defalcation against the partnership and is subject to discharge in accordance with the relief provided in the Bankruptcy Code.

## JUDGMENT

The Court grants judgment for the plaintiff and holds that the debt to the plaintiff in the amount of Two Thousand Nine Hundred Fifty Dollars ($2,950.00) is non-dischargeable. This portion of the debtors' obligation should be paid in accordance with the promissory note owed to plaintiff. The remaining portion of the promissory note and the outstanding debt to the Bank of Isle of Wight may remain on the debtors' schedules as dischargeable, unsecured debts.

IT IS SO ORDERED.