**Stephen J. GREENBERG, Appellant & Cross–Appellee,**

v.

**Judith De TESSIERES t/a Washington Financial, Washington Monetary Exchange, Appellees & Cross–Appellants.**

Nos. 89–7077, 89–7081.

United States Court of Appeals, District of Columbia Circuit.

Argued April 9, 1990.

Decided May 4, 1990.

Richard J. Stahl, Fairfax, Va., for appellant in 89–7077 and cross-appellee in 89–7081.

William Schladt, Gaithersburg, Md., for appellee in 89–7077 and cross-appellant in 89–7081.

Before WALD, Chief Judge, MIKVA and BUCKLEY, Circuit Judges.

Opinion for the court filed by Circuit Judge MIKVA.

MIKVA, Circuit Judge:

In this appeal, we review the district court's summary judgment against the appellant; we also address the impropriety of counsel raising frivolous claims for sanctions against opposing parties.

The appellant, Stephen Greenberg, asserts that the district court abused its discretion in granting summary judgment against him, particularly in light of the proposed amendments to his complaint. The appellee not only defends the summary judgment against Greenberg, but charges in a cross-appeal that the district court abused its discretion in not granting Rule 11 sanctions against Greenberg. We affirm the district court's decision to grant summary judgment against the appellant and deny de Tessieres' cross-appeal. In light of the frivolous Rule 11 claim which she raises in her cross-appeal, we chastise de Tessieres and her counsel for filing the cross-appeal, and deny de Tessieres her costs.

## I. BACKGROUND

Appellee Judith de Tessieres was in the business of advising would-be investors when she met Stephen Greenberg in April of 1986. She counseled Greenberg on one particular opportunity which offered a possible return of the invested money plus fifty percent more over only four months; this deal involved Greenberg loaning $20,000 to Vacation and Travel Planners, Inc. ("VATP") to facilitate VATP's providing cruise ship service to certain conventions sponsored by the Montford Point Association ("Montford"); hopefully, he would receive back $30,000. De Tessieres contends that she described the risks associated with this transaction to the appellant, including the fact that Montford had previously withdrawn from a similar deal with VATP and that Montford was to tender no performance bond assuring VATP some payment.

When payment was due on Greenberg's loan to VATP, the borrower lacked sufficient funds to cover repayment, motivating Greenberg to seek compensation from VATP, its president, executive vice president, and the trustee of the trustee company that was to ensure repayment of the loan out of the proceeds of the charter arrangement. Failing to win back his investment through these suits, Greenberg instituted this case against de Tessieres for having negligently advised him to invest in VATP, and for having defrauded him as well. The basis of these charges is de Tessieres' alleged failure to uncover and relay certain information about the financial background of VATP's officers, as individuals (including the poor credit rating of VATP's vice president, Venant Vincent). Greenberg claims he would never have invested in VATP had he been adequately informed. The appellant specifically claims that the precise reason for VATP's dire financial condition is irrelevant to his claim. He asserts that no matter why the company could not repay his loan, it was de Tessieres' incomplete advice on the officers' personal financial backgrounds that resulted in his making this unfortunate investment.

The district court agreed with de Tessieres that there was no causal connection between her asserted failure and Greenberg's loss, either on the malpractice claim or on the fraud charge. We agree. The trial judge added that nothing in Greenberg's amended complaint would cure this defect. The court also, in a footnote, disposed of the appellee's motion for sanctions against the appellant; the appellee ignored the court's indication that the sanction claim did not warrant serious attention, and reiterated that claim in her cross-appeal to this court.

## II. ANALYSIS

### A. *Summary Judgment was Proper*

"[I]f the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact," summary judgment may be granted. FED.R.CIV.P. 56. The district court found, as to both claims, that "even assuming arguendo that [the] defendant was negligent in failing to provide certain financial information, there is no evidence

to support a causal connection between the defendant's omission and plaintiff's loss." *Greenberg v. de Tessieres*, 1988 WL 134936 (D.D.C. Nov. 30, 1988). It also considered Greenberg's amended complaint, and held that even as modified, the claim was insufficient.

■ Appellant Greenberg still contends that the "reason why the loan was not repaid ... is ultimately" irrelevant. He is wrong on this point. In the malpractice context, a plaintiff must show that it was the "natural and continual sequence" of events flowing from an act or omission of the defendant, "unbroken by any intervening cause," that produced the plaintiff's injury. *Hitaffer v. Argonne Co.*, 183 F.2d 811, 815 (D.C.Cir.1950); *see also White v. United States*, 780 F.2d 97, 107 (D.C.Cir. 1986) ("Given the close match between the reasons the Hospital was required to keep Dwayne White confined and the unfortunate consequences, we" find causation.). As the Restatement (Second) of Torts § 430 comment a (1965) explains, "The conditions which are necessary to make the act negligent in respect to the harm of which the other complains [include] .... subjecting the other *to the hazard from which the harm results*." (emphasis added). It is plain to see that, contrary to Greenberg's assertion, he cannot properly maintain his malpractice suit while agreeing that VATP's inability to repay him was not tied to the risk created by de Tessieres' failure to reveal information about VATP's officers.

■ With regard to the appellant's cause of action for fraud, we find entirely proper the district court's ruling that Greenberg did not present a sufficient claim, recognizing that he never demonstrated causation. Even assuming that all other elements of a cause of action for fraud were present, a material omission is only actionable where the harm suffered by the plaintiff resulted naturally from the defendant's omission. The Restatement (Second) of Torts § 548A comment b (1977) states, "Pecuniary losses that could not reasonably be expected to result from the misrepresentation are ...

beyond the scope of the maker's liability." In an illustration, the Restatement says,

A, seeking to sell B the municipal bonds of C County, fraudulently tells B that the county received full payment for the bond issue. B purchases the bonds in reliance upon this statement. Subsequently ... the bonds are held void by the supreme court of the state on the ground that a court had no jurisdiction to issue certain orders with respect to them. As a result, B suffers pecuniary loss. A is not liable to B for the loss.

RESTATEMENT (SECOND) OF TORTS § 548A illustration 1 (1977). This case presents a situation analogous to that contemplated by the Restatement, because Greenberg cannot argue that the cause of his investment going bad—Montford's cancellation of charters with the cruise ship company in which he invested—was related to de Tessieres' omission or the information Greenberg did not have—details of the financial background of VATP's officers. Rather, the appellant is attempting to regain his investment in a failed enterprise on the fortuitous and coincidental ground that his investment advisor may have omitted to provide certain details unrelated to the cause of the investment going sour. But a cause of action for fraud exists not to compensate for all omissions or misrepresentations, but only those leading to the loss ultimately suffered, and no such nexus exists here. Summary judgment was proper.

### B. *Sanctions for Attorney Misconduct*

■ Courts hold a panoply of powers with which to sanction parties and their attorneys for wasting the time and resources of the courts and opposing litigants. The range and variety of these authorities coincides with the variety of means by which litigants may abuse the justice system, and with the importance of ensuring that litigants respect the courts as public instruments of justice, not private instruments for combat.

The American Rule on attorney fees and costs of litigation encourages those with actual and significant disagreements to seek their resolution in a civil, nonviolent

setting; it does not seek to make the loser pay the other's costs of presenting his or her side. Mindful of this underlying philosophy of the need to permit access to the courts, we are loathe "to stifle the enthusiasm or chill the creativity that is the very lifeblood of the law." *Eastway Const. Corp. v. City of New York*, 762 F.2d 243, 254 (2d Cir.1985). Sanctions for bringing a case or an argument into court ought to be reserved for unusual circumstances.

The sanction device is not to be simply another weapon for battling litigators to use, an additional poker chip which allows a player to stay in the game for one more hand. Sanctions for one party's wasteful use of the judicial system must not be allowed to become a basis for the other party to reply, "Wastrel, you have cost me and I am determined to cost you."

In this light, we review our options for addressing de Tessieres' frivolous reiteration of her sanction request, first moving for sanctions in the district court, receiving a rejection, and nevertheless repeating that motion in this court. The district court pointed out that the claims raised in Greenberg's suit were not precluded by his earlier suits against other parties; apparently this did not satisfy de Tessieres' desire to see Greenberg punished for suing her. When asked about the propriety of this sanction motion at oral argument, counsel had little more upon which to base his assertion that the district court abused its discretion in denying attorney fees than to say that his client wanted the motion for fees repeated. Responding to a client's wishes cannot, however, justify wasteful and frivolous cross-appeals.

This court has held that we possess "the inherent power to enforce the standards of professional conduct and respect for the adjudicative process that it requires of its practitioners." *Jenkins v. Tatem*, 795 F.2d 112, 114 (D.C.Cir.1986). Among the most basic of those standards "is that the court's process be invoked only for a proper purpose." *Id.* See also *Roadway Express v. Piper*, 447 U.S. 752, 765, 100 S.Ct. 2455, 2463–64, 65 L.Ed.2d 488 (1980) ("[T]his Court [has] recognized the 'well-acknowl-edged' power of a court to levy sanctions in response to abusive litigation practices." (citation omitted)).

Congress has specifically endorsed the practice of charging attorneys for expenses, including attorneys' fees, attributable to conduct which "multiplies the proceedings in any case unreasonably and vexatiously." 28 U.S.C. § 1927.

The Federal Rules of Appellate Procedure, furthermore, permit damages and single or double costs attributable to frivolous appeals, FED.R.APP.P. 38, and permit us to make exceptions to the general rule that costs of appeal are taxed to the loser, FED.R.APP.P. 39(a).

We have reviewed our options for dealing with improper appeals—particularly those appeals based not upon the merits of a suit but upon sanction motions. We sit to serve the needs of parties with legitimate conflicts, but not to serve capricious seekers of sanctions, be they attorneys or their clients. Attorneys, for their part, should keep in mind that they sign the pleadings and attest to their legitimacy. "The power of a court over members of its bar is *at least as great as* its authority over litigants." *Roadway Express*, 447 U.S. at 766, 100 S.Ct. at 2464 (emphasis added). When the client dictates to the lawyer which arguments to raise on appeal, the practice of allowing only specially trained and trusted individuals to join the bar is rendered hollow.

We order that de Tessieres, though prevailing in this appeal, be denied her costs. This is certainly not a harsh measure, but hopefully will signal future litigants not to call upon this court for sanctions sought without good reason. There are other options with more bite.

*So ordered.*