Opinion for the Court filed by Circuit Judge WALD.
 

 WALD, Circuit Judge:
 

 John R. Spicer appeals from a judgment of the district court holding that bankruptcy does not discharge his $339,000 debt to the United States. Spicer promised to pay this amount in settlement of the government’s civil claims against him for fraud. The district court held the debt nondischargeable under 11 U.S.C. § 523(a)(2)(A), which provides that bankruptcy “does not discharge an individual debtor from any debt ... for money [or] property ... to the extent obtained by ... false pretenses, a false representation, or actual fraud.” We affirm.
 

 I. BACKGROUND
 

 On October 3,1989, real estate broker and investor John R. Spicer entered a guilty plea in the United States District Court for the District of Columbia on a single count of interstate transportation of money obtained by fraud. Spicer admitted that in documents submitted to the Department of Housing and Urban Development (“HUD”), he had intentionally overstated the down payment made by a home buyer in order to help the buyer qualify for an FHA-insured mortgage.
 

 Spicer was sentenced to incarceration for four months. Although the fraud conviction was predicated upon a single transaction involving a property at 764 Howard Road, S.E., in the District of Columbia, Spicer admitted in factual stipulations that he had made similar misrepresentations on a total of 81 applications for FHA-insured mortgages in 1983 and 1984. The district court included in his sentence an order to pay restitution to the government in the amount of $340,000, equal to the profits he earned as a result of these misrepresentations. In each case, Spicer overstated the down payment made by the buyer, who used that false information to obtain an FHA-insured mortgage. In each case, Spicer’s misrepresentation was germane to HUD’s determination that the buyer qualified for an FHA-insured mortgage.
 
 [1]
 
 And in each case, Spicer profited from the transaction either as the seller of the property or as the seller’s broker, earning a commission on the sale. Buyers of 43 of the 81 parcels subsequently defaulted, resulting in losses of $1.8 million to HUD.
 

 After being convicted on the criminal fraud count, Spicer reached a settlement agreement with the government on all its pending civil claims against him under the False Claims Act, 31 U.S.C. §§ 3729
 
 et seq.,
 
 and for common law fraud. Under the terms of the agreement, Spicer did not admit liability, but did promise to pay the government $339,000, plus interest at 8.5%, over a 10-year period. On October 26, 1990, Spicer executed two promissory notes to that effect. In return, the government explicitly released all its civil claims (except tax claims) against him. Once this settlement agreement was reached on the civil claims, the district court deleted the restitution order from Spicer’s criminal sentence.
 

 On July 29, 1992, Spicer filed a voluntary Chapter 7 bankruptcy petition, seeking,
 
 inter alia,
 
 to discharge his obligations on his promissory notes to the government. On October 29, 1992, the government filed an adversary complaint in bankruptcy court seeking a determination that the $339,000 Spicer owed to the government is not dis-chargeable in bankruptcy, under a provision of the Bankruptcy Code stating that bankruptcy “does not discharge an individual debtor from any debt ... for money [or] property ... to the extent obtained by ... false pretenses, a false representation, or actual fraud,” 11 U.S.C. § 523(a)(2)(A). The bankruptcy court granted the government’s
 
 *1155
 
 motion for summary judgment.
 
 In re Spicer,
 
 155 B.R. 795 (Bankr.D.D.C.1993). The district court affirmed in an unreported memorandum opinion. Spicer now appeals from that judgment.
 

 II. Analysis
 

 A.
 
 Nondischargeability Under 11 U.S.C. § 523(a)(2)(A)
 

 If Spicer’s debt to the government is “debt for money [or] property ... obtained by ... fraud,” it is not dischargeable in bankruptcy under the plain terms of 11 U.S.C. § 523(a)(2)(A). Both the bankruptcy court and the district court held that Spicer’s debt fell under that statutory provision.
 

 On appeal, Spicer contends that the district court erred in characterizing his debt as one “for money or property obtained by fraud.” Relying principally on two Seventh Circuit eases,
 
 Maryland Casualty Co. v. Cushing,
 
 171 F.2d 257 (7th Cir.1948), and more recently
 
 Matter of West,
 
 22 F.3d 775 (7th Cir.1994), Spicer argues that because under the settlement agreement the government expressly released its underlying tort claims for fraud, a “novation” occurred in which the parties’ original rights and obligations ceased to exist and were replaced by new contractual obligations. Consequently, Spicer reasons, even if his original obligation to the government had been for money or property obtained by fraud, his post-settlement debt does not fit that description. Instead, he contends, it is just an ordinary contractual obligation — a promise to pay, made in exchange for the government’s promise to forego certain legal claims. And ordinary contractual obligations, unlike debts for money or property obtained by fraud, are dischargeable in bankruptcy.
 

 Maryland Casualty
 
 and
 
 West
 
 do indeed lend support to Spicer’s theory. In
 
 West,
 
 an embezzler executed a promissory note to her defrauded employer in exchange for an express release of the employer’s civil claims against her, then a short time later petitioned for bankruptcy. Applying the rule established in
 
 Maryland Casualty,
 
 the
 
 West
 
 court held the note dischargeable, explaining that “[e]ven if the obligation arising from ... [the] embezzlement would have been nondis-chargeable due to its fraudulent nature, no allegations of fraud surrounded the note, and the note substituted a contractual obligation for a tortious one.” 22 F.3d at 777.
 
 See also Gonder v. Kelley,
 
 372 F.2d 94 (9th Cir.1967) (per curiam).
 

 We decline to follow the
 
 Maryland Casualty
 
 approach, however, because in our view it improperly elevates legal form over substance. We cannot agree with a rule under which, through the alchemy of a settlement agreement, a fraudulent debtor may transform himself into a nonfraudulent one, and thereby immunize himself from the strictures of § 523(a)(2)(A). The weight of recent authority rejects the
 
 Maryland Casualty
 
 approach because it is contrary to the public policy embodied in § 523(a)(2)(A) of preventing fraudulent debtors from escaping their obligations at the expense of innocent defrauded creditors. The leading case is
 
 Greenberg v. Schools,
 
 711 F.2d 152 (11th Cir.1983), where the Eleventh Circuit concluded that “a debt which
 
 originates from
 
 the debtor’s fraud should not be discharged simply because the debtor entered into a settlement agreement.”
 
 Id.
 
 at 156 (emphasis added). Rather than looking to the current legal form of the debt, the court “should inquire into the factual circumstances behind the settlement agreement to ascertain whether ... the debt ... was
 
 derived from
 
 the alleged fraudulent conduct_”
 
 Id.
 
 (emphasis added).
 

 The
 
 Greenberg
 
 approach has been followed in most recent decisions in the bankruptcy courts.
 
 See, e.g., In re Marceca,
 
 129 B.R. 371 (Bankr.S.D.N.Y.1991);
 
 In re Carnahan,
 
 115 B.R. 697 (Bankr.D.Colo.1990);
 
 In re Bobofchak,
 
 101 B.R. 465 (Bankr.E.D.Va.1989);
 
 In re Peters,
 
 90 B.R. 588 (Bankr.N.D.N.Y.1988);
 
 In re Pavelka,
 
 79 B.R. 228 (Bankr.E.D.Pa.1987);
 
 In re Kovacs,
 
 42 B.R. 1 (Bankr.D.Mass.1982);
 
 In re Rush,
 
 33 B.R. 97 (Bankr.D.Maine1983).
 
 But cf, e.g., In re Anderson,
 
 64 B.R. 331 (Bankr.N.D.Ill.1986). As the
 
 Peters
 
 court cogently explained, “[dischargeability is determined by the substance of the liability, not the form.” 90 B.R. at 604.
 

 
 *1156
 
 We think the
 
 Greenberg
 
 approach sound because, as numerous courts have noted, it effectuates the policy Congress sought to implement when it enacted § 523(a)(2)(A). “A debtor’s ‘fresh start’ is not absolute; the [Bankruptcy] Code embodies a delicate balance between the rights of debtors and the rights of defrauded creditors.”
 
 In re Pavelka,
 
 79 B.R. at 232. “Although debtors are entitled under the [Bankruptcy] Code to an unencumbered fresh start, Congress has unmistakably mandated in section 523(a)(2)(A) that they may not get a fresh start at the expense of defrauded third parties.”
 
 In re Rush,
 
 33 B.R. at 98 (citation omitted).
 

 In contrast, under the
 
 Maryland Casualty
 
 approach “[t]he intent of Congress to except from discharge debts incurred by fraud could effectively be shortcircuited by a simple execution of settlement. To disregard the settlement agreement and look at the underlying nature of the claim would not hinder the overall scheme of the Bankruptcy Code of giving the
 
 honest
 
 debtor a fresh start.”
 
 In re Bobofchak,
 
 101 B.R. at 468 (emphasis added). The purpose of the fraud exception to the general principle of dischargeability is “to discourage fraudulent conduct and to ensure that relief intended for honest debtors does not inure to the benefit of the dishonest.”
 
 In re Wilson,
 
 12 B.R. 363, 370 (Bankr.M.D.Tenn.1981). Settlement makes the dishonest debtor no more honest, and no more entitled to the relief Congress intended to reserve for the honest debtor.
 

 In
 
 Matter of West,
 
 the Seventh Circuit argued that
 
 Greenberg
 
 and its progeny can be reconciled with
 
 Maryland Casualty,
 
 and specifically criticized the bankruptcy court’s decision below,
 
 In re Spicer,
 
 for its rejection of the
 
 Maryland Casualty
 
 novation theory. The
 
 West
 
 court reasoned that because in
 
 Greenberg
 
 there was no express mention that the settlement agreement included a waiver or release of the underlying fraud claim, there was no novation and the underlying fraud claim retained its vitality. 22 F.3d at 777. The
 
 West
 
 court is certainly correct that the Eleventh Circuit’s
 
 Greenberg
 
 opinion offers no details as to what was included in the settlement agreement. But the prior history of that case suggests that the settlement agreement may well have included a release of the underlying fraud claim.
 
 See In re Schools,
 
 14 B.R. 953, 955 (Bankr.S.D.Fla.1981) (plaintiff “agreed to exchange the cause of action for the promissory note” and therefore “is not entitled to resurrect the original unliquidated, untried claim for the purpose of now finding it non-dischargeable”),
 
 vacated and remanded sub nom. Greenberg v. Schools,
 
 21 B.R. 1011 (S.D.Fla.1982),
 
 aff'd,
 
 711 F.2d 152 (11th Cir.1983). The Eleventh Circuit itself characterized the case as one in which the “settlement agreement
 
 extinguished a claim
 
 originally arising out of fraud,” 711 F.2d at 153 (emphasis added). Settlement agreements typically do involve release or waiver of the underlying fraud claim.
 
 See In re Pavelka,
 
 79 B.R. at 232 n. 15 (“a party would be foolish not to include a release in a stipulated settlement of a state court action”). In any event, whether or not the settlement in
 
 Greenberg
 
 included an express release or waiver, in our view that case stands for a broader principle: a fraudulent debtor may not escape nondischargeability, imposed as a matter of public policy by Congress in § 523(a)(2)(A), merely by altering the
 
 form
 
 of his debt through a settlement agreement, whether or not the agreement includes an express release or waiver of the fraud claim.
 

 The
 
 West
 
 court also asserts that, with the sole exception of
 
 In re Spicer,
 
 the bankruptcy eases following
 
 Greenberg v. Schools
 
 did not reach the question of whether settlement agreements including express waivers or releases of underlying fraud claims constitute novations, substituting new dischargeable debts for the original nondischargeable obligations. On our reading of those cases, however, they cannot be reconciled with
 
 Maryland Casualty.
 
 For example,
 
 In re Bobofchak,
 
 101 B.R. at 467-68, expressly rejected the theory that novation extinguishes nondis-ehargeability, saying that contrary to the debtor’s contention that the settlement extinguished the underlying tort claim against him, a settlement never “extinguish[es] the bankruptcy court’s responsibility to look beyond the agreement to the underlying nature and character of the debtor’s original liability.” Similarly,
 
 In re Peters,
 
 90 B.R. at 604, said that a “debt that originates from the
 
 *1157
 
 debtor’s fraud should not be discharged simply because the debtor has entered into a settlement ... agreement, and the debt now arises from a contract rather than a tort.”
 
 In re Pavelka,
 
 79 B.R. at 232, said that although the settlement agreement “purported to release debtor from ... liability,” the court would look to the nature of the underlying debt rather than the settlement agreement to determine whether the debt was dischargeable in bankruptcy. We think the courts in these cases meant what they said and said what they meant: a fraudulent debtor remains a fraudulent debtor, and debt originating in fraud remains nondischargeable even if its legal form changes under a settlement agreement.
 

 Following
 
 Greenberg v. Schools,
 
 we look beyond the form of the settlement agreement to the substance of the underlying obligation, and conclude that Spicer’s debt to the government did indeed “originate from” and “derive from” his fraudulent conduct. Although the subsequent settlement agreement alters the legal form of that obligation, it does not transmogrify its essential nature so as to immunize it from the command of § 523(a)(2)(A) that debt for money or property obtained by fraud is not dischargeable in bankruptcy.
 

 B.
 
 Causation
 

 Spicer next contends the district court erred in concluding that his debt was for “property ... obtained by ... fraud” because the government failed to prove that his misrepresentations proximately caused HUD’s losses on the defaulting mortgages. Spicer candidly admits that he made misrepresentations to HUD on buyers’ applications for FHA-insured mortgages. It is undisputed that some of those mortgagors subsequently defaulted, and that HUD lost $1.8 million as a result. Spicer argues, however, that his misrepresentations caused HUD’s injury only in an incidental “but-for” sense; the mortgagors’ defaults were proximately caused by a variety of factors, such as job loss or other personal financial reversals, all beyond Spicer’s control. To establish that his debt is nondischargeable due to fraud, Spicer insists, the government must prove that his misrepresentations were the proximate cause of its losses, and it has not done so here.
 

 Proximate causation — loss or damage to the creditor “as a proximate result of’ the debtor’s misrepresentation — is an element that must be proved in order to establish nondischargeability under § 523(a)(2)(A).
 
 In re Britton,
 
 950 F.2d 602, 604 (9th Cir.1991).
 
 See also In re Sestito,
 
 136 B.R. 602 (Bankr.D.Mass.1992);
 
 In re Larson,
 
 136 B.R. 540 (Bankr.D.N.D.1992);
 
 In re Tam,
 
 136 B.R. 281 (Bankr.D.Kan.1992);
 
 In re Gadsden,
 
 128 B.R. 45 (Bankr.E.D.N.Y.1991);
 
 but cf. In re Gerlach,
 
 897 F.2d 1048, 1051 (10th Cir.1990) (creditor need not prove damages caused by fraud in order to establish nondischargeability). And in general, the causation element in fraud eases demands more than mere “but-for” causation.
 
 See Greenberg v. de Tessieres,
 
 902 F.2d 1002, 1004 (D.C.Cir.1990) (“but-for” causation is not sufficient to establish common law fraud);
 
 In re Hibbs,
 
 568 F.2d 347 (3d Cir.1977) (“but-for” causation is not sufficient to establish claim under False Claims Act); Restatement (Seoond) of ToRTS § 548A (1977) (to establish fraud, fraudulent act must be a “substantial cause” of victim’s loss).
 

 For its part, the government contends that proof of causation is not necessary at all in this case, because the uncontested facts and the settlement agreement conclusively establish both the fraudulent nature of Spicer’s conduct and the extent of his nondischargeable debt for purposes of § 523(a)(2)(A). The government relies on cases holding that when a prior court judgment conclusively establishes the extent of a nondischargeable debt, collateral estoppel precludes relitigation of that issue.
 
 See, e.g., In re Comer,
 
 723 F.2d 737, 740 (9th Cir.1984).
 

 We are not persuaded that the uneontested facts and the settlement agreement in themselves establish as much as the government claims. It is certainly true, as the government asserts, that the extent of Spicer’s debt to the government is conclusively determined by the settlement agreement. But Spicer does not dispute the
 
 amount
 
 of his debt;
 
 *1158
 
 instead, he disputes the government’s assertion that the entire amount of that debt has been conclusively determined to be nondis-chargeable due to fraud. In our view, the mere fact that the debt was in settlement of the government’s (untried and unproven) fraud claims, without more, is insufficient to establish its nondischargeability. Nor was the character of the debt as the product of Spicer’s fraudulent conduct conclusively established either in Spicer’s criminal conviction or in the settlement agreement. Spi-cer’s guilty plea to one count of fraud in his criminal trial establishes at most the fraudulent nature of but a single transaction involving a single parcel of property, upon which the criminal count was predicated. That single fraud count cannot be said to conclusively establish the fraudulent nature of the other 80 transactions
 
 [2]
 
 ; nor does Spicer’s criminal conviction establish that his misrepresentations caused HUD’s losses, the precise question raised here. We note that the factual stipulations in the criminal case, in which Spicer admitted to making misrepresentations in 80 additional transactions without admitting that his conduct amounted to fraud, pointedly reach no conclusion as to whether the ultimate “defaults and foreclosures” were the “result of the conduct with which Mr. Spicer was associated.” Appellant’s Appendix (“App.”) 13-14. We further note that in recitals in the settlement agreement on the civil fraud claims, Spicer expressly denies “liability, legal fault, or responsibility” for any losses to the government. App. 1. Thus neither the criminal proceeding nor the settlement agreement can be said to conclusively establish that all of Spicer’s misrepresentations amounted to fraud. Nor do they establish that Spicer’s misrepresentations proximately caused the government’s losses, an essential element of nondischargeability.
 

 Nonetheless, we think the requisite element of proximate causation was established by the courts below. The bankruptcy court addressed the question of causation as follows:
 

 In arguing that the defaulting mortgagors caused the government’s losses, the debtor seeks to avoid responsibility for his actions _ The government program at issue here required by law that the mortgagor make a downpayment as a pre-condition to obtaining federal mortgage insurance. Thus, absent the debtor’s false statements, the government would never have been called upon to pay off the mortgages. The debtor is not entitled to escape or limit liability by laying the blame for the government’s losses on the defaulting mortgagors where his false statements resulted in the government agreeing to insure the mortgages in the first place.
 

 In re Spicer,
 
 155 B.R. at 803. Although Spicer cites this statement as evidence that the bankruptcy court erroneously adopted a “but-for” standard of causation, we read it somewhat more broadly. Admittedly the language of the third sentence (“absent the debtor’s false statements, the government would never have been called upon....”) seems to stop at “but-for” causation, but the rest of the passage, especially the final sentence (“false statements
 
 resulted in
 
 the government agreeing ...”) (emphasis added), is consistent with proximate causation. A fair reading of the entire statement is that it recognizes
 
 some
 
 causal nexus between Spi-cer’s misrepresentations and the government’s losses, without specifying the precise nature of that causal relationship.
 

 The district court recognized this ambiguity in the bankruptcy court’s statement:
 

 
 *1159
 
 The Bankruptcy Court
 
 appears to
 
 have adopted a “but-for” test for causation in this case, yet this passage implicitly recognizes that appellant’s misrepresentations were a substantial causal factor of the government’s loss.... Without choosing a definitive test for causation, the Court holds that a sufficient nexus between Spi-cer’s misrepresentation and monetary losses to the government has been demonstrated in this case.
 

 Memorandum Opinion at 5-6, App. 29-30.
 

 The district court thus identifies the ambiguity in the bankruptcy court’s statement, and, crucially, goes on to clarify that, based on the undisputed facts, Spicer’s misrepresentations caused HUD’s losses in a legally sufficient sense — even if the stricter standard of proximate causation applies.
 

 We agree with Spicer that proof that his misrepresentation proximately caused harm to the government is required in order to establish the fraudulent nature of his debt for purposes of § 523(a)(2)(A). Applying that standard, the district court concluded that Spicer’s misrepresentations proximately caused HUD’s losses. Spicer’s misrepresentations were material to HUD’s determination that the mortgage applicants met the financial requirements to qualify for FHA-insured mortgages and had a sufficient personal financial stake in the properties to have the proper incentives to avoid default. The misrepresentations were thus more than a “but-for” cause; they proximately caused HUD’s losses when the buyers to whom HUD improvidently granted FHA-insured mortgages on the basis of Spicer’s misrepresentations of their financial qualifications defaulted. The defaults were thus a foreseeable consequence of Spicer’s conduct. It is undoubtedly true that in each case other factors also “caused” the buyer’s default, but that is of no moment, for as long as Spicer’s misrepresentations were a material and proximate cause, they need not have been the sole factor causing HUD’s losses.
 
 See In re Sobel,
 
 37 B.R. 780, 786 (Bankr.S.D.N.Y.1984).
 
 See also In re Gerlach,
 
 897 F.2d at 1052 (“a debt is ‘obtained by fraud if the fraud is a substantial factor in the creditor’s decision”).
 

 Spicer cites prior cases in which no proximate causation was found, but these are easily distinguished on the facts. For example, in
 
 United States v. Hibbs,
 
 568 F.2d 347 (3d Cir.1977), the seller of residential properties made false certifications on FHA loan applications concerning the properties’ heating, plumbing and electrical systems. Those misrepresentations were held not to be a material cause of HUD’s losses when the buyers defaulted, even though they were a “but-for” cause in the sense that HUD would not have approved the loans absent the certifications. In that case, however, the certifications were merely an ancillary requirement, not material to HUD’s determination that the borrowers were financially qualified or had a sufficient personal financial stake in the property to be unlikely to default. As the Fifth Circuit later noted in
 
 United States v. Miller,
 
 645 F.2d 473 (5th Cir.1981), “false statements regarding the ability of purchasers to afford housing could very well be the major factor [causing] subsequent defaults,” and thus
 
 Hibbs
 
 does not preclude a fraud claim against a developer who misrepresented buyers’ down payments. Similarly, we conclude that
 
 Hibbs
 
 does not preclude the determination by the district court that the seller’s (or broker’s) misrepresentation of the buyers’ down payments was a proximate cause of the guarantor’s loss when the buyers subsequently defaulted on their mortgages.
 

 Because this case was decided below on a motion for summary judgment, we must review the decision to grant summary judgment
 
 de novo. In re Varrasso,
 
 37 F.3d 760, 763 (1st Cir.1994) (district court reviews bankruptcy court’s grant of summary judgment
 
 de novo,
 
 and court of appeals applies same standard in reviewing district court’s affirmance);
 
 Rosen v. Bezner,
 
 996 F.2d 1527, 1530 & n. 2 (3d Cir.1993) (same). Summary judgment in bankruptcy is governed by Bankruptcy Rule 7056, which incorporates the standard of Rule 56 of the Federal Rules of Civil Procedure: summary judgment may be granted only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.
 
 Varrasso,
 
 37 F.3d at 762-63. On a motion for summary judgment, “all inferences to be drawn ... must be viewed in the light most
 
 *1160
 
 favorable to the party opposing the motion.”
 
 Matsushita Elec. Indus. Corp. v. Zenith Radio Corp., 475
 
 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). A genuine issue of material fact exists “if the evidence is such that a reasonable jury could return a verdict for the non-moving party.”
 
 Anderson v. Liberty Lobby, Inc.,
 
 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).
 

 In this case, the underlying facts are undisputed. From those facts, the district court determined that Spicer’s misrepresentations were a proximate cause of HUD’s subsequent losses. But “if, based on the record, inferences contrary to those drawn by the trial court are also plausible, summary judgment must be reversed.”
 
 Santiago v. Lane,
 
 894 F.2d 218, 223 (7th Cir.1990) (citation omitted). Here, Spicer adduced no evidence supporting an inference contrary to that reached by the court below. Instead he argues only that as a matter of law his misrepresentations could not have been the
 
 proximate
 
 cause of HUD’s losses. As we have demonstrated, however, Spicer’s legal argument is without merit. Once that legal barricade falls, it follows ineluctably that Spi-cer’s misrepresentations
 
 must
 
 have been the proximate cause of HUD’s losses. It is undisputed that Spicer intentionally misrepresented buyers’ downpayments in order to induce HUD to approve FHA-insured mortgages for parties who otherwise would not qualify; without evidence of adequate down payments, HUD would have rejected the applications, calculating the risk of default too high. HUD went for Spicer’s bait, and suffered massive losses when those buyers subsequently defaulted. Viewing all the evidence in the light most favorable to Spicer, we think a rational factfinder could only conclude from the undisputed facts that Spicer’s misrepresentations did indeed proximately cause HUD’s losses.
 
 See In re Varrasso,
 
 37 F.3d at 764 (court may not choose between “conflicting but plausible inferences” on summary judgment, but if “[ujndisputed facts ... point unerringly to a single, inevitable conclusion,” summary judgment is warranted);
 
 cf., e.g., In re Batie,
 
 995 F.2d 85, 90 (6th Cir.1993) (affirming bankruptcy court’s ruling on summary judgment that debt was nondischargeable; undisputed facts established debtor’s “intent to deceive” because “no rational jury could find” otherwise). We therefore affirm the conclusion of the district court, that the undisputed facts demonstrate that Spicer’s misrepresentations proximately caused HUD’s losses.
 

 C.
 
 Extent of Debt Obtained by Fraud
 

 Spicer finally contends that the district court erred by assuming that the entire amount of his debt was nondischargeable, when some (or all) of it was punitive in nature. Section 523(a)(2)(A) says that debts “for money [or] property
 
 ... to the extent
 
 obtained by” fraud are nondischargeable. 11 U.S.C. § 523(a)(2)(A) (emphasis added). Thus only that portion of a debt attributable to the debtor’s fraud is nondischargeable.
 
 In re Church,
 
 69 B.R. 425, 435 (Bankr.N.D.Tex.1987).
 
 But cf. In re St. Laurent,
 
 991 F.2d 672 (11th Cir.1993) (nondischargeability is an “all-or-nothing” proposition). Spicer contends that there was no showing here that the amount of the settlement reflects “the extent of’ the government’s “actual pecuniary loss” as a result of his fraudulent actions. Appellant’s Brief at 29. In particular, Spicer contends that at least part of the settlement amount is “punitive” and therefore not subject to § 523(a)(2)(A).
 

 Courts are divided on the question of whether punitive damages awarded in fraud cases are nondischargeable.
 
 Compare In re St. Laurent,
 
 991 F.2d at 672 (punitive damages portion of fraud judgment is nondis-chargeable)
 
 and In re Manley,
 
 135 B.R. 137 (Bankr.N.D.Okla.1992) (same),
 
 with In re Levy,
 
 951 F.2d 196 (9th Cir.1991) (punitive damages are dischargeable),
 
 cert. denied,
 
 504 U.S. 985, 112 S.Ct. 2965, 119 L.Ed.2d 586 (1992)
 
 and In re Ellwanger,
 
 105 B.R. 551, 556 (9th Cir. BAP 1989) (same). In this case we need not decide whether punitive damages are dischargeable, however, for there is no basis for Spicer’s assertion that his debt, or any part of it, represents punitive damages. Unlike the cases Spicer cites, in this case no punitive damages were awarded. It is undisputed that the government’s actual losses — which were proximately caused by Spicer’s misrepresentations,
 
 see supra
 
 Part
 
 *1161
 
 II.B. — were $1.8 million, a figure far exceeding the $339,000 settlement figure. The $339,000 debt in this ease is neither pure punishment nor punitive damages added on to a compensatory damages award. It is instead the amount the government agreed to accept in lieu of pursuing civil fraud claims under which, if successful, it might have recovered $1.8 million in
 
 actual
 
 damages, and perhaps even more under the False Claims Act which allows for a doubling or trebling of damages. That the government settled for less than it might have garnered had it successfully pursued its claims in court certainly does not make the debt punitive in character.
 
 [3]
 
 And although the settlement figure closely corresponds to the $340,000 restitu-tionary amount originally ordered (and subsequently deleted) as part of Spicer’s criminal sentence, there is simply no basis for assuming that the “punitive” character of the criminal sentence somehow transfers to the settlement of the government’s civil fraud claims.
 

 The bankruptcy court reasoned that the entire amount of the settlement agreement, $339,000, was a “debt” for “money or property ... obtained by ... fraud,” insofar as the debt resulted entirely from Spicer’s fraudulent conduct. The relevant “property” was, in this ease, the FHA mortgage guarantees, which Spicer secured for third parties.
 
 See In re Sprague,
 
 104 B.R. 352, 355 (Bankr.D.Ore.1989) (fraudulently obtained loan guarantees are “property” for purposes of § 523(a)(2));
 
 see also Chernick v. United States,
 
 492 F.2d 1349 (7th Cir.1974) (reaching similar conclusion under predecessor statute). This ease, the bankruptcy court noted, is plainly distinguishable from the cases cited by Spicer,
 
 e.g., In re Carnahan,
 
 115 B.R. 697, and
 
 In re Bobofchak,
 
 101 B.R. 465, in which courts had to apportion settlements between nondischargeable fraud claims, and dis-chargeable non-fraud claims. 155 B.R. at 800-01. The district court concurred in this analysis.
 

 We agree with the conclusion of the courts below, even while recognizing that there is arguably some ambiguity in the phrase “debt ... for money [or] property ... to the extent obtained by_fraud.” Some courts have said that “to the extent obtained by fraud” modifies “debt,” so that if the debt is “obtained by” the debtor’s fraudulent conduct it is nondischargeable.
 
 See, e.g., In re Levy,
 
 951 F.2d at 198. Other courts have said that “to the extent obtained by fraud” modifies “money or property,” so that the debt is nondischargeable to the extent the money or property was “obtained by” the debtor’s fraud.
 
 See, e.g., In re Manley,
 
 135 B.R. at 145. But in many cases, including the present one, there is no practical difference between these two formulations, for both will produce the same result. All of Spicer’s debt was obtained by fraud, in the sense that the entire debt originated in Spicer’s fraudulent misrepresentations. And all of Spicer’s debt is for property obtained by fraud — the fraudulently-obtained FHA loan guarantees. We conclude that on either interpretation, Spi-cer’s $339,000 debt to the government was in its entirety attributable to his fraudulent conduct, and therefore nondischargeable.
 

 III. Conclusion
 

 Because John R. Spicer’s $339,000 debt to the United States is in its entirety debt for money or property obtained by fraud, under 11 U.S.C. § 523(a)(2)(A) it is nondischargeable in bankruptcy. The judgment of the district court is affirmed.
 

 It is so ordered.
 

 [1]
 

 . FHA mortgages generally require relatively small down payments. Nonetheless, a down payment is required in order to ensure that the borrower has a sufficient personal financial stake to avoid default. In the transactions at issue here, Spicer sold houses with down payments smaller than required for FHA mortgages, or in some cases no down payment at all. Spicer then intentionally misrepresented the transactions in documentation submitted to HUD, showing down payments sufficient to qualify the buyers for FHA-insured mortgages.
 

 [2]
 

 . In
 
 Brown v. Felsen,
 
 442 U.S. 127, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979), the Supreme Court held that in considering the nondischargeability of a debt, a bankruptcy court may consider all the relevant evidence, and is not barred by
 
 res judicata
 
 from considering evidence extrinsic to the judgment and record of a prior state court proceeding concerning the debtor’s obligation to his creditor. The Court declined to reach the question of whether collateral estoppel would apply to bar relitigation of issues actually and necessarily decided in the prior proceeding,
 
 e.g.,
 
 that the debtor had committed fraud.
 
 Id.
 
 at 139 n. 10, 99 S.Ct. at 2213 n. 10.
 

 Like the Supreme Court in
 
 Brown v. Felsen,
 
 we need not decide whether collateral estoppel applies. We conclude only that even if Spicer's fraud conviction conclusively determines the fraudulent nature of the single transaction involved there, it surely does not determine that the 80 transactions not directly at issue in that case were also fraudulent.
 

 [3]
 

 . Spicer argues that because the $339,000 settlement figure equals his net proceeds from the 81 fraudulent transactions, this somehow establishes that the settlement amount is unrelated to the government's losses. But the government could have agreed to settle its fraud claims for any amount, determined by any method or no method at all. It could have chosen Spicer's net worth, some factor of his income-earning potential, or a purely arbitrary figure acceptable to the parties. The fact that it chose a figure based on Spicer's net proceeds does not convert the settlement into punishment.