**In re Douglas Raymond TURNER,**
SSN 521–74–7233, Debtor.

**UNITED STATES of America, Plaintiff,**

v.

**Douglas Raymond TURNER, and Green View Developers, Inc., Defendants.**

Bankruptcy No. 93–23685–PAC.
Adv. No. 94–1198–PAC.

United States Bankruptcy Court,
D. Colorado.

Feb. 27, 1995.

Robert Clark, Asst. U.S. Atty., Dist. of Colorado, David W. Long, U.S. Dept. of Justice, Washington, DC, for U.S.

Douglas Raymond Turner, pro se.

### ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

PATRICIA A. CLARK, Bankruptcy Judge.

This matter is before the Court on the United States' Motion for Summary Judgment. No response was filed by defendant, Douglas Raymond Turner. The United States is seeking a determination that the debt owed by Turner to the United States is not dischargeable pursuant to: (1) 11 U.S.C. § 523(a)(2)(A), because it is a debt arising from the compromise of claims against the debtor for money obtained by false pre-

tenses, false representations, or actual fraud, and (2) 11 U.S.C. § 523(a)(6), because it is a debt resulting from the compromise of claims against the debtor for willful and malicious injury to the United States.

The Court finds that oral argument would not be of material assistance in the determination of this matter.

This Court has jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157.

Turner has not responded to the United States' Motion for Summary Judgment, and consistent with prior pleadings submitted by Turner, the Court finds that the facts as asserted by the United States are true. The undisputed facts pertinent to this dispute are as follows.

The United States filed the complaint in this matter on behalf of its agency, the Department of Housing and Urban Development (HUD). HUD assists low income families in obtaining housing in private accommodations by paying the owners of eligible private housing (housing providers) the difference between what a low income family can afford and the fair market rent. *See,* 42 U.S.C. § 1437(f).

From March 1988 to August 1989, the Denver HUD office employed Turner as a Supervisory Operating Accountant. As such, Turner had access to and responsibility for the computer which generated requests for electronic fund transfers to the bank accounts of participating housing providers. During his tenure at the Denver HUD office, Turner caused the name Green View Developers, Inc. (Green View) to be added to the list of housing providers. Turner also caused other necessary information to be entered onto the computer thereby enabling Green View to receive payments as a housing provider. Green View was not an eligible housing provider. In fact, at all times pertinent to the complaint, Turner was the owner, operator, president, registered agent, and sole director of Green View. Green View's principal place of business was Turner's residence.

Turner caused the information to be entered onto the HUD computer with the intent to deceive the United States. On at least six occasions Turner caused the United States to make payments to Green View. In total, Turner caused $1,006,130.00 to be transferred to Green View's account, an account controlled by Turner.

On August 8, 1989, the United States filed a civil action against Turner and Green View for common law fraud, conversion, unjust enrichment, and breach of fiduciary duty, *United States v. Turner and Green View Developers, Inc.,* Civ. No. 89–F–1337 (D.Colo. 1989). Shortly thereafter, on August 29, 1989, Turner was indicted on six counts of knowingly embezzling, stealing or converting HUD funds in violation of 18 U.S.C. § 641.

On February 27, 1990, Turner and Green View entered into a Settlement Agreement with the United States, in which Turner agreed to pay the United States $1,006,-130.00, plus interest, in exchange for the United States releasing all claims it had against Turner and Green View arising from the allegations contained in the complaint filed in the civil action.

On March 9, 1990, pursuant to a plea agreement, Turner pled guilty to knowingly embezzling, stealing or converting HUD funds in the amount of $358,460.00. As part of the plea agreement, Turner and the United States agreed that the plea agreement was urged upon the court because the settlement agreement in the related civil action would accomplish the collection of restitution from Turner in the criminal case.[1]

On December 28, 1993, Turner filed for relief pursuant to Chapter 7 of the Bankruptcy Code, Case No. 93–23685–PAC. Turner listed the United States as a creditor, and sought to discharge all obligations remaining under the Settlement Agreement. On April 8, 1994, the United States filed this adversary proceeding, alleging that Turner's obligations remaining under the Settlement Agreement are non-dischargeable pursuant

---

1. Pursuant to the civil case Settlement Agreement, Turner executed a promissory note to the United States in the amount of $1,006,130.00. Credited against the note are $490,498.65 in property seized by the United States and $136,-302.18 in property transferred to the United States. Currently, Turner owes $379,329.17 in principal, plus accrued interest.

to 11 U.S.C. §§ 523(a)(2)(A), 523(a)(4), and 523(a)(6).

The United States asserts that it is entitled to summary judgment pursuant to 11 U.S.C. § 523(a)(2)(A) and § 523(a)(6). Specifically, the United States argues that the debt, as evidenced by the Settlement Agreement, the plea agreement, and Turner's conviction, clearly originates from Turner's scheme to defraud the United States. Furthermore, the United States argues that the Settlement Agreement did not change the nature of the debt for purposes of the Bankruptcy Code, and thus the debt remains nondischargeable.

Because Turner did not respond to the Motion for Summary Judgment, the Court has considered his answer to the complaint for his defenses. Turner has admitted that the underlying debt resulted from the Settlement Agreement in the civil action and the plea agreement and conviction for knowingly embezzling, stealing, and converting HUD funds in the criminal case. As a defense to the dischargeability action, Turner appears to assert that the Settlement Agreement was a novation, thereby rendering the debt a contract debt, dischargeable in bankruptcy.

■ In order for this Court to grant summary judgment in favor of the United States, the Court must determine that there are no genuine issues as to a material fact and that the United States is entitled to judgment as a matter of law. Fed.R.Bankr.P. 7056, incorporating Fed.R.Civ.P. 56; *Russillo v. Scarborough*, 935 F.2d 1167, 1170 (10th Cir.1991). The movant has the burden of establishing that it is entitled to summary judgment, and the record is reviewed in the light most favorable to the nonmoving party. *Deepwater Invs. Ltd. v. Jackson Hole Ski Corp.*, 938 F.2d 1105, 1110 (10th Cir.1991).

■ Because the United States has alleged that the debt evidenced by the Settlement Agreement is not dischargeable due to the nature of the underlying debt, this Court must first determine whether it is appropriate to look behind the settlement agreement. The Tenth Circuit resolved this issue in *Arnold v. Employers Ins. of Wausau (In re Arnold)*, 465 F.2d 354 (10th Cir.1972). *Ar-*

*nold* was decided under a provision of the Bankruptcy Act which is virtually identical to the provisions of 11 U.S.C. § 523(a)(4). *Arnold* followed those courts which held that "[t]he acceptance of a note from one who procures a sum of money by fraud, as an evidence of the debt thereby created, after the fraud has been discovered, does not take the debt out of the operation of ... the Act." *Id.* at 356 (citations omitted). Accordingly, the court held that a court must look behind the note in question to determine if the obligation arose out of fraudulent transactions. *Accord, Central Bank of Denver v. Olinger (In re Olinger)*, 165 B.R. 283 (Bankr.D.Colo. 1994).

In *Greenberg v. Schools*, 711 F.2d 152 (11th Cir.1983), the Eleventh Circuit agreed that a court must look behind the settlement agreement to determine if a debt stems from fraud. *Greenberg* involved facts similar to those in the instant case in a dischargeability action brought pursuant to 11 U.S.C. § 523(a)(4). The debtor entered into a settlement agreement in full settlement of a civil action involving debtor's alleged fraud, misappropriation and misuse of corporate funds while acting in a fiduciary capacity. Following a subsequent default, a second agreement was reached. Thereafter, the debtor filed bankruptcy and sought to have the debt discharged. The creditor filed an adversary proceeding, seeking a determination that the debt was nondischargeable pursuant to 11 U.S.C. § 523(a)(4). In response, the debtor argued that the original debt had been extinguished by the settlement agreement and that the remaining debt was pursuant to a contract and was therefore dischargeable.

The Eleventh Circuit Court rejected the debtor's position that the debt was dischargeable, stating that such reasoning defied the purpose of the bankruptcy statute. It is this Court's considered judgment, however, that the approach taken by the Bankruptcy Court is overly restrictive and not justified by the language of the statute itself, and would permit the discharge of debts that Congress intended to survive bankruptcy. The interpretation urged by the appellee would allow a debtor to dis-

charge a debt incurred by his own fraud by simply entering into a settlement agreement prior to declaring bankruptcy. The debtor could even accept a substantially adverse settlement with the knowledge that its terms and conditions would be nullified by the subsequent petition in bankruptcy. Neither the statute, nor its legislative history, nor cases construing the reach of the statute, support this position. *Id.,* at 154–55. Hence, the court held that to determine dischargeability the bankruptcy court must look behind the settlement agreement to determine the nature of the debt on which the settlement agreement is based. According to the court, the standards for exempting a debt from discharge are to be applied to the circumstances of the original debt and the settlement agreement is not to be considered as a contract wholly distinct from the circumstances of the underlying debt.

The court remanded the case to the bankruptcy court with the following guidance:

[A] debt which originates from the debtor's fraud should not be discharged simply because the debtor entered into a settlement agreement. The underlying debt was unquestionably the result of the debtor's fraud, not his breach of the settlement agreement. The fact that appellant's claim never matured into a final judgment but was terminated by a settlement agreement should not be controlling. The Bankruptcy Court should inquire into the factual circumstances behind the settlement agreement to ascertain whether or not the debt incurred by appellee Schools was derived from the alleged fraudulent conduct while managing the Greater Asbury Collections corporation. If the court is satisfied that Schools' conduct was fraudulent and did result in the debt that Greenberg claims against him, the debt should not be discharged by the bankruptcy proceeding.

*Id.,* at 156. *Accord, In re Carnahan,* 115 B.R. 697 (Bankr.D.Colo.1990). *See also, In re Marceca,* 129 B.R. 371 (Bankr.S.D.N.Y. 1991); *In re Peters,* 90 B.R. 588 (Bankr. N.D.N.Y.1988); *but see, Matter of West,* 22 F.3d 775 (7th Cir.1994) (holding that a note given in substitution for and release of a prior obligation based on fraud is dischargeable as long as there was no fraud involved in the latter transaction).

Although both Greenberg and Arnold were decided pursuant to 11 U.S.C. § 523(a)(4), this Court finds that their reasoning is equally sound when applied to actions pursuant to 11 U.S.C. § 523(a)(2)(A) or (a)(6). The similarity of factual circumstances encompassed by 11 U.S.C. § 523(a)(2)(A), (a)(4), and (a)(6) is sufficient cause for this court to hold that the reasoning of *Arnold* and *Greenberg* should be applied in the instant case to allow the court to look behind the settlement agreement to determine whether the underlying debt is non-dischargeable pursuant to 11 U.S.C. § 523(a)(2)(A) or (a)(6). *Accord, In re Rush,* 33 B.R. 97 (Bankr.D.Maine 1983) (where the underlying debt is non-dischargeable pursuant to 11 U.S.C. § 523(a)(2)(A), "a debt arising out of a [subsequent] settlement agreement is non-dischargeable.") Notwithstanding the fact that the United States chose to move for summary judgment pursuant to subsections (a)(2)(A) and (a)(6), (and not (a)(4)), Turner's actions which resulted in his guilty plea for embezzlement of funds were sufficient to permit the court to consider nondischargeability under any of the three subsections of 11 U.S.C. § 523 cited in the United States' complaint. This Court follows *Arnold* and adopts the reasoning of *Greenberg* in holding that the court may, and in fact must, look behind the settlement agreement to determine the nature of the underlying debt in deciding whether the debt is dischargeable pursuant to 11 U.S.C. § 523(a)(2)(A), (a)(4), or (a)(6).

██ The Court must now determine whether the underlying debt is non-dischargeable. In a non-dischargeability action, the plaintiff must prove he is entitled to judgment by a preponderance of the evidence. *Grogan v. Garner,* 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). Pursuant to 11 U.S.C. § 523(a)(2)(A), a debt is not dischargeable in bankruptcy if the debt is for "money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—(A) false pretenses, a false representation, or actual fraud...."

■ In order to succeed on a claim under Section 523(a)(2)(A) for money obtained by false pretenses, false representation or fraud, the creditor must prove the following:

1) the debtor made a false representation of fact,

2) the fact was material,

3) the debtor made the representation knowing it to be false,

4) the debtor made the representation with the intent that the creditor act in reliance on the representation,

5) the creditor relied on the representation,

6) the creditor's reliance was justified, and

7) the reliance caused damage to the creditor.

*In re Mullet,* 817 F.2d 677, 680 (10th Cir. 1987).

■ Unquestionably, Turner's actions in this matter meet every element of the *Mullet* test. Turner made false representations of material fact to the United States on each of the six occasions on which he submitted information to the United States indicating that Green View was entitled to payment as a housing provider. As noted above, Turner does not dispute that he knowingly embezzled, stole and converted HUD funds while employed as a Supervisory Operating Accountant at the Denver HUD office. Thus, he knowingly made false representations of material fact with the intent that the United States act in reliance on thereon. Therefore, elements one through five have been proven by the uncontroverted facts in this matter.

The final two elements of the *Mullet* test have also been proven by the undisputed facts. During the pertinent time period, Turner was employed by HUD as a Supervisory Operating Accountant and given responsibility for the HUD computer which was used to submit payment information to the United States. This Court finds that the United States' reliance on the information submitted to them by Turner via the HUD computer was justified. Turner also does not dispute that the United States was damaged in the amount of $1,006,130.00 ($379,-329.17 of which remains outstanding). Accordingly, reliance and damages have been proven. The Court therefore finds that each of the elements of 11 U.S.C. § 523(a)(2)(A) have been proven and that the underlying debt is nondischargeable.

Accordingly, this Court finds that Turner's debt to the United States in the principal amount of $379,329.17, plus interest, is nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A).

The United States' second claim for relief is brought pursuant to 11 U.S.C. § 523(a)(6). For a debt to be nondischargeable pursuant to § 523(a)(6), it must be for willful and malicious injury by the debtor to another entity or to the property of another entity. The standard for determining whether a debt is non-dischargeable pursuant to § 523(a)(6) was defined in *In re Pasek,* 983 F.2d 1524 (10th Cir.1993) in which the Tenth Circuit adopted the standards of *In re Posta,* 866 F.2d 364, 367 (10th Cir.1989). The court stated:

[W]e believe the rule fully supported by our cases is that "willful and malicious injury" occurs when the debtor, without justification or excuse, and with full knowledge of the specific consequences of his conduct, acts notwithstanding, knowing full well that his conduct will cause particularized injury. Such a standard is consistent with our rule that § 523(a)(6) requires not only intentional conduct on the part of the debtor, but also intentional or deliberate injury.

\* \* \* \* \* \*

However, we also have recognized that secured creditors are not restricted to direct evidence of specific intent to injure in satisfying the requirements of § 523(a)(6); rather, the requisite "malicious intent [may] be demonstrated by evidence that the debtor had knowledge of the creditor's rights and that, with that knowledge, proceeded to take action in violation of those rights." (Citation omitted.) Thus, "the debtor's actual knowledge or the reasonable foreseeability that his conduct will result in injury to the creditor," are highly relevant.

*Pasek,* at 1527.

■ Pursuant to *In re Wallace,* 840 F.2d 762, 765 (10th Cir.1988), Turner is estopped from litigating the factual issues underlying § 523(a)(6) dischargeability because:

1. the issue to be precluded is the same as that involved in the prior … action;

2. the issue was actually litigated by the parties in the prior action, and

3. the [prior] court's determination of the issue was necessary to the resulting final and valid judgment.

All of the elements necessary to a determination pursuant to § 523(a)(6), as set forth in *Pasek, supra,* were also necessary to a determination of Turner's guilt in the criminal case.[2] Turner's confession to knowingly embezzling, stealing, and converting to his own use the amount of $358,460.00 precludes him from arguing that the debt, to the extent of $358,460.00, is not one for willful and malicious injury to the United States or to the property of the United States.

■ This Court must determine from the pleadings whether the amount Turner confessed to embezzling, $358,460.00, remains outstanding, or whether that portion of Turner's debt to the United States was satisfied by the $490,498.65 in property seized by the United States. The plea agreement states:

The government and the defendant agree that restitution should be limited to the assets heretofore seized by the FBI in connection with this investigation. This restitution agreement is made and urged upon the Court for approval because of a settlement agreement in the related civil case pending between the defendant and the United States. The settlement agreement in that matter will accomplish the collection of restitution for the acts of the defendant in this case, causing loss to the United States. The value of the assets seized in the criminal case will be offset against the civil judgment.

Complaint, Exhibit 5, p. 1. It appears from the language of the plea agreement that the criminal restitution amount has been satisfied. Therefore, this Court finds that the United States is not entitled to a determination that the debt, in the amount set forth in the plea agreement, is nondischargeable pursuant to 11 U.S.C. § 523(a)(6).

The United States did not seek summary judgment pursuant to 11 U.S.C. § 523(a)(4).

Furthermore, because the Court has found that Turner's debt to the United States is nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A), it is not necessary to determine whether Turner's debt to the United States is nondischargeable pursuant to 11 U.S.C. § 523(a)(4). Accordingly, it is

ORDERED that the United States' Motion for Summary Judgment, filed on August 25, 1994, is granted in part and denied in part.

FURTHER ORDERED that defendant Douglas Raymond Turner's debt to the United States in the principal amount of $379,329.17, plus interest, is nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A).

FURTHER ORDERED that the United States is not entitled to summary judgment pursuant to 11 U.S.C. § 523(a)(6).

FURTHER ORDERED that the United States shall submit a form of judgment to the Court on or before March 17, 1995.

FURTHER ORDERED that the United States shall notify the Court, in writing, on or before March 17, 1995, whether it intends to dismiss its claims against Green View Developers, Inc.

---

2. "Actually litigated" does not require a full trial, but rather a full and fair opportunity to litigate, which requirement is met by a criminal plea and resulting conviction. *Fontneau v. United States,* 654 F.2d 8, 10 (1st Cir.1988).