In re Roger M. DETRANO, Debtor.

Joseph O. Giaimo, as Executor of the estate of Elizabeth M. Chase, deceased, Plaintiff–Appellant,

v.

Roger M. Detrano, Defendant–Appellee.

No. 98 CV 5616(CBA).

United States District Court, E.D. New York.

July 10, 2001.

Michael T. Sucher, Brooklyn, NY, for Plaintiff–Appellant.

Roy J. Lester, Lester & Fontanetta, Garden City, NY, for Defendant–Appellee.

## MEMORANDUM AND ORDER

AMON, District Judge.

### Introduction

Plaintiff-appellant Joseph O. Giaimo, as executor of the estate of Elizabeth M. Chase, appeals the bankruptcy court's grant of summary judgment to defendant-appellee Roger M. Detrano. At issue is whether the approximately $460,000 judgment obtained by Giaimo against Detrano based on a breach of the settlement agreement entered into by the parties is dis-chargeable in bankruptcy pursuant to 11 U.S.C. § 523(a)(4). For the reasons discussed herein, the bankruptcy court's judgment holding the debt to be dischargeable is vacated, and the case is remanded for further consideration.

### Background

In 1979, Elizabeth M. Chase appointed appellee Detrano as Trustee to manage her financial affairs pursuant to an Inter Vivos Trust Agreement. After Chase died in December 1988, appellant Giaimo was named the executor of Chase's estate by the New York State Surrogate's Court.

In his capacity as executor, Giaimo commenced three actions against Detrano between 1989 and March 1993 in the New York State Supreme Court, alleging that Detrano had fraudulently converted funds from the Chase Trust while he was serving as Trustee. Specifically, Giaimo claimed that monies entrusted to Detrano were unaccounted for, and that Detrano had made various loans from the Trust to himself, his brother, and his business partner, which were never repaid.

In March 1993, Detrano filed a petition and accounting in Surrogate's Court, seeking a judicial settlement of his account as Trustee. Giaimo filed objections to the petition, and again sought damages from Detrano for fraud and breach of his fiduciary duties as Trustee. The three actions filed in State Supreme Court were subsequently transferred and consolidated in Surrogate's Court.

The parties entered into a settlement agreement (the "Settlement Agreement") on May 24, 1995, resolving the consolidated action. The Settlement Agreement was approved by the Surrogate's Court in an order dated November 28, 1995. Under the terms of the Settlement Agreement, Detrano agreed to pay Giaimo "in full settlement of any and all claims of the Estate

of Elizabeth M. Chase" a total of $480,000, plus 5% interest—$50,000 within 60 days after the settlement had been approved, and periodic payments thereafter. (Settlement Agreement at 2–3.) As security for the payment of the debt, Detrano also agreed to convey to Giaimo within 30 days a mortgage on his residence in the amount of $430,000, a term life insurance policy in the same amount, and a confession of judgment in the same amount to be entered upon Detrano's default.

The Settlement Agreement provided that once it had been approved by the Surrogate's court:

> all parties [would] withdraw any objections to the accounting as filed by Roger DeTrano as Trustee and consent to the entry of an order discharging him as Trustee and from all further liability with respect to his actions a trustee of the intervivos trust dated November 17, 1975.

(*Id.* at 7.) It further provided that:

> within 30 days of the entry of the settlement order, all parties shall execute and exchange general releases with respect to all matters embraced in the accounting and other related pending actions in this Court, with the release running to DeTrano excepting his obligations under this agreement.

(*Id.* at 7–8.)

Detrano defaulted after paying only $25,000 to Giaimo, and Giaimo subsequently commenced an action on March 26, 1996 against Detrano in State Supreme Court to enforce the Settlement Agreement. On August 22, 1996, judgment was entered against Detrano for $459,039.15, and for specific performance of his nonmonetary obligations under the Settlement Agreement.

Detrano filed for Chapter 7 bankruptcy on August 8, 1997 in the Bankruptcy Court for the Eastern District of New York. On November 6, 1997, Giaimo filed a complaint in that court seeking a declaration that the obligations owed him pursuant to the state court judgment were not dischargeable in bankruptcy pursuant to 11 U.S.C. § 523(a)(4).

Both parties moved for summary judgment. On July 27, 1998, the bankruptcy court granted Detrano's motion and denied Giaimo's motion, ruling that the obligation was dischargeable because it was based solely on a contractual debt. *See In re Detrano,* 222 B.R. 685 (Bankr.E.D.N.Y. 1998) (Bernstein, B.J.).

Giaimo commenced this appeal, which was originally assigned to District Judge Leonard D. Wexler, on September 3, 1998. On May 5, 1999, counsel for Giaimo informed Judge Wexler that Detrano had filed for Chapter 13 bankruptcy on April 15, 1999, and that any decision in the instant matter had to be stayed pursuant to the automatic stay provision of the Bankruptcy Code, 11 U.S.C. § 362(a).

The case was subsequently reassigned to District Judge Raymond J. Dearie on May 25, 1999, and then to this Court on October 17, 2000. At a February 1, 2001 status conference, the parties informed the Court that the automatic stay had been lifted by stipulation in bankruptcy court in June 1999, and that this appeal could be decided.[1]

### Discussion

#### I. *Jurisdiction and Standard of Review*

The Court has jurisdiction to entertain this appeal pursuant to 28 U.S.C. § 158(a).

---

1. Although counsel for Giaimo apparently wrote a letter on June 11, 1999 informing the Court that the stay had been lifted, the letter was never filed with the Clerk of the Court or placed in the record.

*See In re First Jersey Secs., Inc.,* 180 F.3d 504, 508 (3d Cir.1999); *In re Orange Boat Sales,* 239 B.R. 471, 473 (S.D.N.Y.1999).

■ Pursuant to Rule 8013 of the Federal Rules of Bankruptcy Procedure, a reviewing district court "may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree," or it may remand with instructions for further proceedings. This Court is bound to accept the bankruptcy court's factual findings unless clearly erroneous, but will review its conclusions of law *de novo. See In re AroChem Corp.,* 176 F.3d 610, 620 (2d Cir.1999); *In re Bennett Funding Group, Inc.,* 146 F.3d 136, 138 (2d Cir.1998).

## II. *Release and Novation*

■ Section 523(a) of the Bankruptcy Code provides that a bankruptcy discharge "does not discharge an individual debtor from any debt ... (4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." 11 U.S.C. § 523(a)(4). A creditor must establish his claim that he was defrauded by a preponderance of the evidence in order to prevent the debt from being discharged. *See Grogan v. Garner,* 498 U.S. 279, 291, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991); *Zohlman v. Zoldan,* 226 B.R. 767, 771 (S.D.N.Y.1998).

The dispute at the heart of the instant appeal concerns the extent to which a court should inquire beyond a parties' settlement agreement to determine whether a particular debt is "for fraud" and therefore nondischargeable in bankruptcy. Giaimo argues that the debt owed by Detrano arises out of fraud or a breach of fiduciary duty, and is thus nondischargeable under Section 523(a)(4). Detrano, for his part, argues that the debt is owed solely pursuant to a contract, the Settlement Agreement the parties entered into resolving the consolidated action in Surrogate's Court. The bankruptcy court ruled in favor of Detrano, and held that the Settlement Agreement effectuated a novation, which extinguished Giaimo's underlying claims for fraud and breach of fiduciary duty and reduced the parties' relationship to a contractual one.

The majority of courts that have addressed this question reach the opposite conclusion; namely, that in bankruptcy, a court should look beyond a settlement agreement to determine whether or not the debt is in fact based on fraud. In *United States v. Spicer,* 57 F.3d 1152 (D.C.Cir.1995), *cert. denied,* 516 U.S. 1043, 116 S.Ct. 701, 133 L.Ed.2d 658 (1996), for example, the D.C. Circuit held that debt originating in fraud is not dischargeable in bankruptcy even if the parties had previously altered the legal form of the obligation pursuant to a settlement agreement. In *Spicer,* the debtor, John Spicer, entered into a settlement agreement with the government resolving civil claims against him for common law fraud and for violation of the False Claims Act, 31 U.S.C. § 3729 *et seq.* In exchange for a release of the claims, Spicer agreed to pay the government $339,000, plus interest, over a ten-year period, and executed two promissory notes to that effect. Spicer subsequently filed a Chapter 7 bankruptcy petition. Rejecting Spicer's contention that the debt he owed the government should be discharged, the D.C. Circuit ruled that in making a determination as to nondischargeability pursuant to Section 523(a)(4), a court should "look beyond the form of the settlement agreement to the substance of the underlying obligation." *Id.* at 1157.

Likewise, in *Greenberg v. Schools,* 711 F.2d 152 (11th Cir.1983), *aff'g,* 21 B.R. 1011 (S.D.Fla.1982), the Eleventh Circuit adopted the district court's conclusion that "[a] debt which originates from the debtor's fraud should not be discharged simply

because the debtor entered into a settlement agreement." *Id.* at 156. In that case, the debtor Carl Schools had settled an action brought by his business partner Jay Greenberg alleging that Schools had committed fraud and breached his fiduciary duties as managing director of Greater Asbury Collections, Inc., by agreeing to pay Greenberg a sum of $100,000 over a 14–year period. Schools subsequently defaulted on the agreement, and filed a bankruptcy petition. The district court held that the parties' settlement agreement was not controlling, and remanded the case to the bankruptcy court for an inquiry "into the factual circumstances behind the settlement agreement to ascertain whether or not the debt incurred by [the debtor] was derived from the alleged fraudulent conduct while managing the Greater Asbury Collections corporation," and thus nondischargeable. *Id.* at 156.[2]

Other courts, however, including the Seventh Circuit and the Ninth Circuit, hold that a promissory note given in exchange for a release creates a novation, which "substitute[s] a contractual obligation for a tortious one" and makes the debt dischargeable in bankruptcy. *In the Matter of West*, 22 F.3d 775, 777 (7th Cir.1994). In the *West* case, the debtor Pamela West had embezzled more than $100,000 while working as a bookkeeper for John Oltman. In exchange for a general release and covenant not to sue, West agreed to pay Oltman $75,000. The Seventh Circuit ruled that under such circumstances, the original debt owed as a result of West's embezzlement had been extinguished and replaced with a contractual

debt that could be discharged in bankruptcy.

The Ninth Circuit, in *In re Fischer*, 116 F.3d 388 (9th Cir.1997), held similarly that a settlement agreement resolving the parties' dispute regarding debtor's purchase of an automotive repair shop, Precision Tune, created a new contractual debt that was dischargeable in bankruptcy. As that court put it, the Compromise Agreement and Mutual Release that the parties entered into "created a novation, extinguishing all claims arising out of the sale of Precision Tune." *Id.* at 390.

Although the Second Circuit has not addressed the question, the bankruptcy courts in this circuit appear to generally adhere to the majority position. In *In re Marceca*, 129 B.R. 371 (Bankr.S.D.N.Y. 1991), for example, the court held that a debtor's execution of promissory notes to pay his partners for partnership funds allegedly misappropriated by him "[did] not convert the debt to a dischargeable contract claim." *Id.* at 373 (citing *Greenberg*); *see also In re Guerrerio*, 143 B.R. 605, 611 (Bankr.S.D.N.Y.1992) (settlement of prepetition litigation did not convert tort claim into a contract claim); *In re Peters*, 90 B.R. 588, 604 (Bankr.N.D.N.Y.1988) (noting in dicta that "[a] debt that originates from the debtor's fraud should not be discharged simply because the debtor has entered into a settlement or indemnification agreement, and the debt now arises from a contract rather than a tort.").

A more recent decision by the bankruptcy court for the Southern District of New York, *In re Rieder*, 178 B.R. 373 (Bankr. S.D.N.Y.1995), *aff'd*, 194 B.R. 734

---

**2.** For other cases adhering to the majority view, *see, e.g., In re Francis*, 226 B.R. 385 (6th Cir. BAP 1998); *In re Richardson*, 221 B.R. 956 (D.Wyo.1998); *In re Turner*, 179 B.R. 273 (Bankr.D.Colo.1995); *In re Williams*, No. 93 CV 74258, 1994 WL 930884 (E.D.Mich. May 31, 1994); *In re Bobofchak*, 101 B.R. 465 (Bankr.E.D.Va.1989); *In re Rush*, 33 B.R. 97 (Bankr.D.Maine 1983); *cf. Arnold v. Employers Ins. of Wausau*, 465 F.2d 354 (10th Cir. 1972) (oral agreement to repay embezzled funds did not make debt dischargeable).

(S.D.N.Y.1996), *aff'd,* 116 F.3d 465 (2d Cir. 1997), however, seems to espouse the minority position in dicta. Citing the Seventh Circuit's *West* opinion, the court in *Rieder* expressly noted that *"[a]bsent novation or release,* courts look beyond the settlement to the underlying debt to determine its dischargeability." *Id.* at 380 (emphasis added).

After a careful review of the conflicting authority on this question, this Court concludes that the majority view is the better reasoned, and therefore vacates the bankruptcy court's judgment that Detrano's debt is dischargeable in bankruptcy. The Court does not take issue with the bankruptcy court's observation in its opinion below that the settlement of an action effectively renders the plaintiff's tort allegations moot and prevents further litigation of them. That is no doubt true as a general matter. Rather, guided by well-established precedent, the Court concludes that a discharge proceeding in bankruptcy court is fundamentally different from a tort action seeking damages, and therefore the Settlement Agreement in this case does not prevent an inquiry into whether Detrano in fact committed fraud or breached his fiduciary duties as alleged for the purposes of determining the dischargeability of his debt.[3]

One of the principal purposes of the Bankruptcy Code is to "provide a procedure by which certain insolvent debtors can reorder their affairs, make peace with their creditors, and enjoy 'a new opportunity in life with a clear field for future effort, unhampered by the pressure and discouragement of preexisting debt.'" *Grogan,* 498 U.S. at 286, 111 S.Ct. 654 (quoting *Local Loan Co. v. Hunt,* 292 U.S. 234, 244, 54 S.Ct. 695, 78 L.Ed. 1230 (1934)). An "honest but unfortunate debtor" is thus able to get a "fresh start," unencumbered by their past debts. *Id.* at 286–87, 111 S.Ct. 654.

That fresh start, however, has never been intended to pertain to all debts. The Code explicitly makes some debts nondischargeable in bankruptcy, including child support, alimony, and liabilities for fraud, because "Congress evidently concluded that the creditors' interest in recovering full payment of debts in these categories outweighed the debtors' interest in a complete fresh start." *Id.* at 287, 111 S.Ct. 654; *see also Cohen v. de la Cruz,* 523 U.S. 213, 217, 118 S.Ct. 1212, 140 L.Ed.2d 341 (1998). Section 523(a) thus "gives creditors an opportunity to prove that particular debts arose through impermissible means, and advances the cornerstone bankruptcy principal that relief befall only the debtor with clean hands." *In re Luthra,* 182 B.R. 88, 91 (E.D.N.Y.1995); *see also In re Weiss,* 235 B.R. 349, 360 (Bankr.S.D.N.Y.1999) (Section 523(a)(4) is "an extension of the general bankruptcy policy that discharge is not meant to protect the dishonest debtor."), *aff'd,* 255 B.R. 115 (S.D.N.Y.2000).

It is the unique character of a bankruptcy discharge proceeding that counsels against holding that a valid settlement agreement bars a creditor from later attempting to prove that a certain debt arises from fraud or a defalcation of a fiduciary duty. Instructive here, although not dispositive, is the Supreme Court's ruling in *Brown v. Felsen,* 442 U.S. 127, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979). *Brown* considered the application of res judicata in the context of a bankruptcy discharge proceeding pursuant to the pre–1979

---

**3.** To this extent, the Court disagrees with the bankruptcy court's comment that "[t]here is absolutely nothing about federal bankruptcy law that should disturb [the] state law outcome" barring litigation of settled claims.

Bankruptcy Act. Section 17a(4) of the Act provided, much like the present Section 523(a)(4), that debts "created by . . . fraud, embezzlement, misappropriation, or defalcation while acting as an officer or in any fiduciary capacity" were not dischargeable.

In the *Brown* case, the creditor G. Garvin Brown was sued in a state court collection action on a loan that he had guaranteed for the debtor Mark Paul Felsen and Felsen's car dealership, LeMans Motors, Inc ("LeMans"). Brown filed cross-claims against Felsen and LeMans, alleging that he had been induced to sign the guarantee "by misrepresentations and non-disclosures of material fact." *Id.* at 128, 99 S.Ct. 2205. The suit was settled by stipulation and a subsequent consent judgment, which provided that the lender could recover jointly and severally against Brown, Felsen, and LeMans, and that Brown could recover against Felsen and LeMans, but did not indicate the cause of action on which Felsen's liability to Brown was based. Felsen then filed for bankruptcy and sought to have his debt to Brown discharged.

The Supreme Court held that the consent judgment resolving the state-court action did not have res judicata effect. The debtor in *Brown* advanced a similar argument to the one that Detrano advances here—that because the creditor chose to resolve the state-court action and did not press his fraud claims, he should be barred from raising them again in a bankruptcy discharge proceeding. In rejecting the debtor's argument, the Supreme Court noted that the creditor was not asserting a new ground for recovery or attacking the validity of the prior consent judgment. Instead, he was "attempting to meet . . . the new defense of bankruptcy which

[debtor] has interposed between [creditor] and the sum determined to be due him . . . . [Debtor] has upset the repose that would justify treating the prior state-court proceeding as final, and it would hardly promote confidence in judgments to prevent petitioner from meeting [debtor's] new initiative." *Id.* at 133–34, 99 S.Ct. 2205.

■ The same reasoning applies in this case. The creditor here, Giaimo, does not seek to assert any new claims against Detrano or challenge the validity of the Settlement Agreement or the Surrogate's Court judgment. Detrano agreed to pay Giaimo $480,000 in full settlement of the state court-actions, and Giaimo does not contest that fact now. The only issue before the bankruptcy court is whether or not Detrano can avoid paying the amount he had previously agreed to pay to Giaimo. Giaimo is seeking only to get the benefit of his prior bargain with Detrano, not to alter the terms of that bargain in any way. Under these circumstances, the Court concludes that Giaimo should be given the opportunity to prove to the bankruptcy court that this particular debt of Detrano's should not be discharged.

■ Detrano argues, and Giaimo apparently concurs, that this case is not directly controlled by *Brown* because the parties here executed general releases.[4] Indeed, the Seventh Circuit and the Ninth Circuit both distinguished *Brown* on the ground that a voluntary release has different consequences than a consent judgment. The Court does not find this distinction to be meaningful in this case.

■ The Settlement Agreement the parties entered into provided that they

---

4. There is no indication in the *Brown* case whether the parties executed releases as part of their stipulation resolving the matter.

would "execute and exchange general releases with respect to all matters embraced in the accounting and other related pending actions in this Court, with the release running to DeTrano excepting his obligations under this agreement." [5] (Settlement Agreement, at 8 ¶ 13). Such a general release, however, "does not state or suggest any intention by either party to release bankruptcy rights and claims," which were not at issue in the state-court actions. *In re Francis*, 226 B.R. 385, 390 (6th Cir. BAP 1998). Indeed, to the extent that the parties considered bankruptcy at all in the Settlement Agreement, the parties had agreed, albeit impermissibly,[6] that the instant debt would not be dischargeable in bankruptcy.

· The Court thus cannot discern any valid reason why it would make a substantial difference here that, in addition to resolving the state-court actions, the Settlement Agreement at issue also contains a general release. In either case, Giaimo is barred from re-litigating the matters at issue in the state-court cases because of the doctrine of res judicata or release, respectively. Whether Detrano's debt is dischargeable in bankruptcy, however, is a different question, one that is simply beyond the bounds of the Settlement Agreement, the Surrogate's Court order, and the releases executed in connection therewith.

A defendant is entitled to a certain amount of repose when he settles an action alleging that he committed fraud. To that end, a plaintiff is barred from attempting to impose further liability on a defendant by reopening the settled action or bringing another fraud action against that defendant. However, the finality accorded a settling defendant has limits. The mere fact that a defendant has settled a fraud action should not mean that the defendant is thereby exempted from the full application of the Bankruptcy Code. Congress has expressed a strong preference that debts owed as a result of fraud or defalcation of fiduciary duties be paid, even in bankruptcy, and a creditor should not be barred because of a prior settlement from subsequently seeking to establish that a certain debt is nondischargeable. To hold otherwise would permit a fraudulent debtor to potentially avoid the consequences of his fraud altogether.

▆▆▆ This Court therefore agrees with the D.C. Circuit's holding in *Spicer* that a debtor should not be allowed to "escape nondischargeability, imposed as a matter of public policy by Congress ..., merely by altering the *form* of his debt through a settlement agreement, whether or not the agreement includes an express release or waiver of the fraud claim." 57 F.3d at 1156 (emphasis in original). Accordingly, Giaimo should be permitted the opportunity to challenge Detrano's discharge of the debt.[7]

### III. Collateral Estoppel

▆▆▆ Although the Court herein vacates the bankruptcy court's grant of summary judgment to appellee Detrano, it declines to grant summary judgment to appellant Giaimo and hold Detrano's debt to be nondischargeable on the current rec-

---

5. No such releases appear in the record on appeal. The parties apparently concur, however, that general releases were executed in this case.

6. Giaimo does not contest the bankruptcy court's ruling that the pre-petition waiver of discharge provision in the Settlement Agreement was void and unenforceable as a matter of public policy.

7. As the Court vacates the bankruptcy court's decision on this ground, it is not necessary to address appellant's other arguments that he is not barred from seeking to hold appellee's debt nondischargeable.

ord. Giaimo bears the burden of establishing that Detrano's debt arises from "fraud or defalcation while acting in a fiduciary capacity." 11 U.S.C. § 523(a)(4). The allegations in Giaimo's complaint that Detrano wrongfully converted monies from the Chase Trust while he was acting as Trustee, since they are disputed, are plainly insufficient to establish that Detrano committed fraud or breached his fiduciary duties as Trustee.

Giaimo's collateral estoppel argument is unavailing. Relying on *Klingman v. Levinson,* 831 F.2d 1292 (7th Cir.1987), Giaimo contends that the language contained in the Settlement Agreement demonstrates that the parties intended collateral estoppel to apply to bar Detrano from asserting that he had not committed fraud or breached his fiduciary duties.

 Under New York law, the doctrine of collateral estoppel "bars a party from relitigating in a second proceeding an issue of fact or law that was litigated and actually decided in a prior proceeding, if that party had a full and fair opportunity to litigate the issue in the prior proceeding and the decision of the issue was necessary to support a valid and final judgment on the merits." *Metromedia Co. v. Fugazy,* 983 F.2d 350, 365 (2d Cir.1992). Thus, collateral estoppel "may be used in dischargeability actions where ... there has been a prior state court decision," but only "where the fact issues in the state and federal proceedings are 'substantially identical.'" *In re Halperin,* 215 B.R. 321, 335 (Bankr.E.D.N.Y.1997) (quoting *In re Krautheimer,* 210 B.R. 37, 49 (Bankr. S.D.N.Y.1997)); *see also Grogan,* 498 U.S. at 284 n. 11, 111 S.Ct. 654 (holding that collateral estoppel applies in Section 523(a) dischargeability cases).

 The bankruptcy court ruled that collateral estoppel did not apply in this case because there was never any state court determination on the merits regarding Giaimo's claims that Detrano had committed fraud or breached his fiduciary duties as Trustee. *Klingman* does not require a different result. In that case, the Seventh Circuit ruled that the consent judgment entered into by the parties had collateral estoppel effect because the debtor specifically "stipulate[d] to the underlying facts that the bankruptcy court must examine to determine whether a debt is dischargeable" under Section 523(a)(4) of the Bankruptcy Code. 831 F.2d at 1296 & n. 3. The agreement at issue in *Klingman* provided expressly:

> That Defendant, in disregard of his fiduciary duties and obligations as Trustee, has failed to retain and conserve the said trust corpus and income therefrom, but rather, in violation of and disregard of his fiduciary duties and obligations as Trustee, has, through his misappropriation and defalcation, allowed or caused the dissipation and loss of the said trust corpus and income therefrom.
>
> . . . .
>
> That malice is the gist of this action, and that the Defendant has stipulated that it is his intention that the obligation to Plaintiff created by this Agreed Judgment Order not be dischargeable in any bankruptcy or similar proceeding, and that in any subsequent proceeding all of the allegations of the Complaint and findings of this Court may be taken as true and correct without further proof.

*Id.* at 1293.

The debtor here did not stipulate to any underlying facts that would establish that the debt was nondischargeable under Section 523(a)(4), and thus entitle appellant to summary judgment. Paragraph 4 of the Settlement Agreement entered into by the parties in this case provides that:

[i]n each of the above-captioned actions the Estate has alleged that DeTrano breached his fiduciary duty and committed fraud and, therefore, DeTrano agrees and represents that the sums due hereunder are not dischargeable in any bankruptcy....

(Settlement Agreement ¶ 4.) Such statement is markedly different from the stipulation that the parties agreed to in *Klingman*. Although paragraph 4 recites that in the underlying actions Giaimo alleged that Detrano had breached his fiduciary duty and committed fraud, it is plain that Detrano did not thereby stipulate to having committed such malfeasance. Accordingly, collateral estoppel does not apply.

The Court therefore remands the case to the bankruptcy judge for a determination on the merits of Giaimo's claim that the debt at issue is nondischargeable pursuant to Section 523(a)(4).

### Conclusion

For the foregoing reasons, the bankruptcy's court order granting summary judgment to Detrano is vacated, and the case is remanded for a determination whether Detrano's debt was incurred as a result of any fraud or breach of fiduciary duty he committed while he served as Trustee of the Chase Trust. The Clerk of the Court is instructed to close the case.

SO ORDERED.